|  |  |
|---|---|
| Allscripts Healthcare, LLC, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) Civil Action No. |
| DR/Decision Resources, LLC, | ) 19-11038-NMG |
| d/b/a Decision Resources Group | ) |
|  | ) |
| Defendant. | ) |

**MEMORANDUM & ORDER**

**GORTON, J.**

This suit arises out of a contractual dispute between Allscripts Healthcare, LLC ("Allscripts" or "plaintiff") and Decision Resources, LLC d/b/a Decision Resources Group ("DRG" or "defendant").

Pending before the Court is the motion of Allscripts to dismiss DRG's counterclaim for false and misleading statements pursuant to Section 43(a)(1)(B) of the Lanham Act.

## I.  Background

### A. The Parties

Allscripts is a healthcare information technology company that collects, aggregates and de-identifies sensitive patient level data from a network of medical practices in compliance

with applicable privacy and security laws and regulations, _i.e._, the Health Insurance Portability and Accountability Act ("HIPAA").

Allscripts licenses its data to third party recipients, provided that, among other things, the third party agrees to protect the data and an independent statistician certifies that the data has been de-identified in compliance with HIPAA.

In June, 2014, Allscripts entered into a Master Data License Services Agreement ("the Agreement") with DRG, a healthcare data and consulting company that compiles and repackages licensed data for sale to third parties.

In February, 2018, Allscripts acquired Practice Fusion, an electronic health records company and data provider, and subsequently formed a new business unit, Veradigm, which competes directly with DRG.

**B. The Agreement**

Pursuant to the terms of the Agreement, which is governed by Delaware law, the parties agreed that

> Allscripts hereby grants to [DRG] a limited, revocable non-exclusive license to use the Data [as defined elsewhere in the Agreement] to create analyses, reports and products ("Client Products") using the Data and to commercially distribute such Client Products to its customers. If the Data is de-identified using a statistician certification, such license is subject to the terms and restrictions set

forth in the statistician certificate. [DRG] shall
have no authority, permission, right, or license with
respect to the Data except as expressly and explicitly
granted to it by Allscripts by the terms of this
Agreement.

The Agreement further provides that either party can
terminate if the other party commits a material breach and
fails to cure within 30 days of receiving written notice.

### C. Alleged Breach of the Agreement

In October, 2018, Allscripts exercised its audit rights
under the Agreement to conduct an audit of DRG's facilities and
records on suspicion that DRG was licensing patient level data
to third parties in violation of the Agreement.

In February, 2019, Allscripts sent a letter to DRG
asserting that DRG was in breach of the Agreement because it was
providing Allscripts' patient level data to DRG clients. DRG
maintained that it was acting in accordance with the terms of
the Agreement and HIPAA. In response to DRG's disavowal of the
accused conduct, Allscripts contended that DRG's provision of
patient-level Allscripts data to DRG customers materially
breached the Agreement.

DRG contends that shortly thereafter it learned that
Allscripts, through Veradigm, "initiated contact with one of
DRG's customers" and informed that customer, who remains

unidentified, that "it should be concerned about DRG's sustained ability to sell [electronic health records ("EHR")] data." DRG submits that Allscripts also "falsely indicated to other DRG customers that DRG [would] soon lose access to Allscripts' data."

**D. Procedural History**

Mediation proved unsuccessful in May, 2019, whereupon Allscripts filed the instant action alleging 1) violation of the Defend Trade Secrets Act (Count I); 2) trade secret misappropriation under Massachusetts law (Count II); 3) breach of contract (Count III); 4) unfair and deceptive practices under M.G.L. c. 93A (Count IV); and 5) fraud in the inducement (Count V). Defendant counterclaimed for 1) declaratory judgment (Counterclaim I); 2) unfair competition under M.G.L. c. 93A (Counterclaim II); 3) false and misleading statements in violation of Section 43(a)(1)(B) of the Lanham Act (Counterclaim III); and 4) breach of contract (Counterclaim IV).

The parties filed cross motions for preliminary injunctions both of which were denied. Prior to the Court's ruling, Allscripts moved to dismiss only DRG's Lanham Act counterclaim (III).

## II. **Motion to Dismiss**

### A. Legal Standard

To survive a motion to dismiss, a claim must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court may only look to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference and matters of which judicial notice can be taken. Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 228 F.3d 1127 (1st Cir. 2000).

Furthermore, the Court must accept all factual allegations in the claim as true and draw all reasonable inferences in the claimant's favor. Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). If the facts in the claim are sufficient to state a cause of action, a motion to dismiss must be denied. See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all the factual allegations in a claim, that doctrine is not applicable to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662 (2009). Threadbare recitals of legal elements which are supported by mere conclusory statements do not suffice to state a cause of action.

Id.  Accordingly, a counterclaim does not state a claim of relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct.  Id.

## B. Analysis

DRG alleges that Allscripts disseminated false and misleading statements in violation of Section 43(a)(1)(B) of the Lanham Act by initiating contact with at least one DRG customer and fostering concern about DRG's sustained right to sell EHR data.  Section 43(a)(1)(B) of the Lanham Act provides that any person who "uses in commerce" any

> false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

To state a claim pursuant to Section 43(a)(1)(B), a claimant must allege that: 1) the offending party made a false or misleading statement of fact; 2) in a commercial advertisement about its product or the product of another; 3) in interstate commerce; 4) that was material and either actually deceived or had the tendency to deceive a substantial segment of the declarant's audience; and 5) which caused injury to the

claimant. <u>Ferring Pharm. Inc.</u> v. <u>Braintree Labs., Inc.</u>, 38 F. Supp. 3d 169, 176-77 (D. Mass. 2014).

Allscripts moves to dismiss DRG's counterclaim on the grounds that the alleged statement 1) was not a commercial product advertisement; 2) did not actually deceive or have the tendency to deceive DRG customers; and 3) was not placed into interstate commerce.

### 1. Commercial Advertising or Promotion

Section 43(a)(1)(B) prohibits falsehoods and misrepresentations only in "commercial advertising or promotion". <u>Podiatrist Ass'n, Inc.</u> v. <u>La Cruz Azul De Puerto Rico, Inc.</u>, 332 F.3d 6, 19 (1st Cir. 2003). To survive a motion to dismiss, then, a claimant must allege that the offending party is a competitor who disseminated speech which "does no more than propose a commercial transaction." <u>Bolger</u> v. <u>Youngs Drug Prods. Corp.</u>, 463 U.S. 60, 66 (1983). Such speech must also "target[] a class or category of purchasers or potential purchasers" with the intent of influencing customers or potential customers to purchase the goods or services of the declarant. <u>Podiatrist Ass'n, Inc.</u>, 332 F.3d at 19.

DRG claims that Allscripts contacted DRG customers and provided false or misleading information for the express purpose

of influencing those customers to discontinue their relationships with DRG in favor of competitor Veradigm.

Allscripts first submits that DRG's claim must be dismissed because DRG identifies only a single instance of alleged misrepresentation. Where the market for a product is limited in number, however, "even a single [solicitation] to an individual purchaser may be enough to trigger the protections of the [Lanham] Act." Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co., 173 F.3d 725, 735 (9th Cir. 1999). For that reason, DRG's identification of only one particular instance of alleged false commercial speech does not warrant dismissal.

Allscripts next contends, relying on Podiatrist Association, Inc., that even if one instance of false commercial speech is actionable under the Lanham Act, DRG's claim still fails because DRG does not identify the means or medium through which Allscripts purportedly contacted that DRG customer. In Podiatrist Association, Inc., however, the plaintiff's claim suffered from an all-around lack of specificity. 332 F.3d at 18. Indeed, the claim alleged only that the defendant "disseminated widely" false and disparaging statements to patients and "actively encouraged" them to seek services elsewhere. Id. Such generalized allegations lack the specificity necessary to state a claim pursuant to Section 43(a)(1)(B).

Here, in contrast, DRG proffers specific false or misleading statements it alleges Allscripts disseminated to DRG's customers and identifies at least one particular occasion on which such a statement was made.  Such a description is specific enough to survive Allscripts' motion to dismiss.

## 2.  False or Misleading Statement

Section 43(a)(1)(B) applies only to statements that are false or misleading. <u>Ferring Pharm. Inc.</u>, 38 F. Supp. 3d at 176-77.  As another session of this Court has explained,

> [u]nless the complained of speech is such that a court can properly say that no reasonable person could be misled by the advertisement in question, it is not appropriate to resolve the issue of the truthfulness of the speech on a motion to dismiss.

<u>Genzyme Corp.</u> v. <u>Shire Human Genetic Therapies, Inc.</u>, 906 F. Supp. 2d 9, 17 (D. Mass. 2012) (internal citations, alteration and quotation marks omitted).

Allscripts submits that, pursuant to that standard, DRG's claim should be dismissed because DRG identifies no statement of "provably false factual connotation." <u>See</u> <u>Milkovitch</u> v. <u>Lorain Journal Co.</u>, 497 U.S. 1, 20 (1990).  To that end, Allscripts maintains that any alleged statements urging caution with regard to DRG's sustained authorization to provide EHR data were not false or misleading by virtue of DRG's material breach of the Agreement.

As DRG emphasizes in response, however, Allscripts was contractually bound by the Agreement at the time of the alleged statements. Indeed, whether DRG materially breached the Agreement such that Allscripts was discharged of its contractual obligation to provide EHR data to DRG is the subject of the instant dispute. DRG has, therefore, sufficiently alleged that the statements of Allscripts to DRG's customers regarding DRG's continued privilege to procure Allscripts' data were false or misleading.

### 3. Interstate Commerce

A false or misleading statement must be placed in interstate commerce to be actionable pursuant to Section 43(a)(1)(B). See, e.g., Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc., 63 F. Supp. 3d 149, 156 (D. Mass. 2014).

Allscripts submits that DRG cannot demonstrate the statements at issue were placed into interstate commerce because DRG fails to allege where, by whom and to whom the statements at issue were made. In its Complaint, however, DRG alleges that

> Allscripts has placed its misleading statements into interstate commerce by making such statements to DRG's customers in various states.

Commerce, as defined in the Lanham Act, has been construed broadly to include false or misleading statements that "affect

the sale of goods or services" in a manner that substantially affects interstate commerce in the aggregate even if made wholly intrastate. See, e.g., Town & Country Motors, Inc. v. Bill Dodge Automotive Grp., 115 F. Supp. 2d 31, 35 (D. Me. 2000); Summit Tech., Inc. v. High-Line Med. Instruments Co., 933 F. Supp. 918, 934 n.10 (C.D. Cal. 1996). Furthermore, a court may reasonably infer that a false statement was placed in interstate commerce from facts alleged. McGrath & Co., LLC v. PCM Consulting, Inc., No. 11-cv-10930-DJC, 2012 WL 503629, *6 (D. Mass. Feb. 15, 2012).

Here, DRG has pled that Allscripts' statements were placed into interstate commerce by virtue of being made to Allscripts' customers throughout the country. DRG has further pled that Allscripts, a North Carolina corporation with its principal place of business in Illinois, contracted with DRG, a Delaware Corporation with its principal place of business in Massachusetts, and that the business models of both companies affect national medical research in the heavily federally-regulated healthcare industry. Drawing all reasonable inferences in DRG's favor, DRG has adequately alleged that Allscripts placed its statements into interstate commerce.

## III. __Motion to Enhance the Protective Order__

DRG moves pursuant to Fed. R. Civ. P. 26 to enhance the protective order entered by this Court on September 11, 2019, ("the Protective Order").  DRG, by its own terms, seeks an "extremely limited enhancement" of the Protective Order to ensure the heightened confidentiality of a single document: "DRG's proprietary aggregate data product (the 'Transformed Data Product')".  According to DRG, the Transformed Data Product is "one of DRG's most valuable assets" and, for that reason, DRG requests to restrict its review to outside counsel only.

Allscripts responds that DRG has failed to establish cause to enhance the Protective Order to prevent Allscripts' in-house attorneys from viewing the Transformed Data Product.  Allscripts submits that such a modification would prevent its attorneys from being fully informed about key issues in the case such that their ability to represent their client would be compromised.

A party to a stipulated protective order seeking to modify the order must demonstrate good cause for modification.  See Jagex Ltd. v. impulse Software, 273 F.R.D. 357, 358 (D. Mass. 2011).  DRG fails to proffer a persuasive reason for its speculation that Allscripts' attorneys, who are officers of the Court and bound by the Protective Order, would flout their duty and disclose to Allscripts' employees information labeled as

"Confidential-Attorneys' Eyes Only" in violation of the Protective Order.

Accordingly, DRG's motion to enhance the Protective Order will be denied.

**ORDER**

For the forgoing reasons, the motion of plaintiff/counter-defendant Allscripts Healthcare, LLC to dismiss the claim of defendant/counter-claimant Decision Resources, LLC d/b/a Decision Resources Group ("DRG") for false and misleading statements in violation of Section 43(a)(1)(B) of the Lanham Act (Docket No. 34) is **DENIED.**

Furthermore, the motion of DRG to enhance the Protective Order entered by this Court on September 11, 2019, (Docket No. 72) is **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated February 20, 2020